# 16-15777

# United States Court of

*for the*

# Appeals for the Ninth Circuit

_____

District Court 15-cv-01703 PHX-JWS

_____

RUSSELL THAW; SHERYL ANN PHIPPS; JOHN M. DALEY;
UNKNOWN PARTY, named as: Patent Lawyer Doe

Plaintiff/Appellants,

v.

LORETTA E. LYNCH, Attorney General; RANER C. COLLINS; SUSAN R.
BOLTON; DAVID G. CAMPBELL; DIANE J. HUMETEWA; STEVEN PAUL
LOGAN; DOUGLAS L. RAYES; G. MURRAY SNOW; JOHN JOSEPH
TUCHI; NEIL V. WAKE; CINDY K. JORGENSON; ROSEMARY
MARQUEZ; JAMES ALAN SOTO; JENNIFER G. ZIPPS,

Defendant /Appellees,

ON APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF ARIZONA

## APPELLANTS' REPLY BRIEF

Joseph Robert Giannini, Esq.
12016 Wilshire Blvd.  Suite 5
Los Angeles, CA 90025
Phone 310 442 9386
Email  j.r.giannini@verizon.net
For Appellants

# TABLE OF CONTENTS

Page

I.  The LR 83.1 Departure from the Norm of Comity Is Invidious *Us* vs. *Them* Discrimination That Is Not Subject to Rational Basis Review……………………1

   A. Rational Basis Is No Longer the Applicable Standard of Review……….4

   B.  Membership In the Arizona Bar is Not Necessary for District Court Bar Admission……………………………………………………………………9

   C.  LR 83.1 Is An Abuse of Discretion Because It is Not Necessary……...10

II. Summary Judgment for Appellants Is Warranted in Light of the Arizona Local Rules Departure from the Norm of Comity and the Supreme Court's Holding That Bar Admission on Motion is Constitutionally Protected…………………………14

III.  The Government Asks This Honorable Court to Adopt an Absurd Interpretation of 28 U.S.C. §§ 2071-72 and FRCP 83 In Order to Justify *Us* vs. *Them* Invidious Local Rule Discrimination………………………………………16

   A. The Statutory Rulemaking Standards and Ninth Circuit Precedent……17

   B.  This Court Should Not Follow the Fourth Circuit's Published Decision Because It Is Fundamentally Flawed…………………………………………..19

   C. LR 83.1 Contradicts Numerous Acts of Congress and It Abridges, Enlarges, and Modifies A Plethora of Substantive Rights…………………22

IV. Rule 83.1's Invidious Discrimination Cannot Pass Rational Basis Review….26

CERTIFICATION AS TO COMPLIANCE WITH TYPE VOLUME LIMITATIONS……………………………………………………………...28

STATEMENT OF RELATED CASES…………………………………………...28

CERTIFICATE OF SERVICE…………………………………………………28

CERTIFICATE FOR BRIEF IN PAPER FORMAT…………………………....29

i

## TABLE OF AUTHORITIES

Page

**Cases**

*Anderson v. Yungkau*, 329 U. S. 482, 485 (1947)…………………………………...17

*Baird v. State Bar of Ariz.*, 401 U.S. 1, 4-6, 8 (1971)……………………………..11

*Baker by Thomas v. General Motors Corp.*, 522 U.S. 222, 233 (1998)…………..25

*Barnard v. Thorstenn*, 489 US 546 (1989) …………………………………..Passim

*Bradwell v. The State*, 16 Wall. 130 (1873)…………………………………………15

*Citizens United,* 558 US 310, 130 S. Ct. 876, 890……………………………10,18

*Dred Scott v. Sandford*, 60 US 393 (1857)…………………………………………26

*Frazier v. Heebe,* 482 U.S. 641 (1987)…………………………………………Passim

*Giannini v. Real,* 911 F.2d 354 (9th Cir. 1990) …………………………………..Passim

*Hillside Dairy Inc. v. Lyons,* 539 US 59, 67 (2003)  ……………………………..21

*Holder v. Humanitarian Law Project*, 561 US 1 (2010 )………………………18

*In re Poole*, 222 F.3d 618 (9th Circ. 2000)………………………………………..9

*In re Lockwood,* 154 US 116 (1894). ……………………………………………15

*Korematsu v. United States,* 323 US 214 (1944)…………………………………26

*Lexecon v. Millberg*, 521 U.S. 26, 35 (1998)……………………………………..17

*Mothershed v. Justices of Sup. Ct.,* 410 F.3d 602, 611 (9th Cir.2005)……….6-7,18

*NAAMJP v. Berch,* 773 F.3d 1037, 1047 (9th Cir. 2014)…………………..6-7,18

*NAAMJP v. Lynch*, 826 F.3d 191 (4th Cir. 2016)…………………………………19

*Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 374 (1978) ……………9,21

*Plessy v. Ferguson*, 163 US 537 (1896)……………………………………………..26

*Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2226–27 (2015)……………………..7

*Romer v. Evans*, 517 US 620, 633 (1996)…………………………………………...11

*Russell v. Hug*, 275 F.3d 812, 815 (9th Cir. 2002)……………………………..18

*Supreme Court of Virginia v. Friedman*, 487 US 59 (1988)…………………Passim

*Supreme Court of New Hampshire v. Piper*, 470 U.S. 274 (1985)…………..Passim

*Theard v. United States*, 354 U.S. 278, 280  (1956)………………………………9

*U.S. v. Ruehle*, 583 F.3d 600 (9th Cir. 2009) ………………………………….9

*United States v. Alvarez*, 135 S.Ct. 2537 (2012)………………………………7

*United States v. Swisher*, 811 F.3d 299 (9th Cir. En banc 2016) …………..7,18-19

*West Virginia Bd. of Ed. v. Barnette*, 319 US 624, 642 (1943). ………………24

*Winterrowd v. American Gen. Annuity Ins. Co.* 556 F.3d 815,
    820 (9th Cir. 2009) …………………………………………………9,22

## Constitutional Provisions

Art. III, §1……………………………………………………………………………..2

First Amendment ……………………………………………………………Passim

## Statutes

5 U.S.C. § 500(b*) Practice Before Federal Administrative Agencies*………..Passim

28 U.S.C. § 332(d)(4)…………………………………………………20,21

 28 U.S.C. § 1654 *Right to Counsel*………………………………………Passim

28 U.S.C. § 1738 *Full Faith and Credit*……………………………..Passim

28 U.S.C. § 2071. *Rule-making power*…………………………………….Passim

28 U.S.C. § 2072. *Rules of procedure and evidence; power to prescribe*…Passim

**Rules**

Federal Rules of Appellate Procedure 46………………………………...Passim

Federal Rules of Appellate Procedure 47……………………………….16,20

Federal Rules of Civil Procedure 12(b)(6)………………………………….8

Federal Rules of Civil Procedure 56……………………………….Passim

Federal Rules of Civil Procedure 83 ……………………………….Passim

Supreme Court Rule 5 ……………………………………………….Passim

**Miscellaneous**

Daniel C. Dennett, *Intuition Pumps and Other Tools for Thinking*
    (W.W. Norton 2013)…………………………………………………1

## I.    The LR 83.1 Departure from the Norm of Comity Is Invidious *Us* vs. *Them* Discrimination That Is Not Subject to Rational Basis Review

*Occam's broom* has been defined as the process where inconvenient facts [or law] are whisked under the rug by intellectually dishonest champions of one theory or another. Daniel C. Dennett, *Intuition Pumps and Other Tools for Thinking*, p. 40 (W.W. Norton 2013). First, midst, and last, the government's argument relies on *Occam's broom.*

The government sweeps under the rug that the reference point for federal bar admission is comity, which provides *general* bar admission privileges to all sister-state attorney/citizens. The freedoms to speech, assembly (expressive association), and to petition the United States government for the redress of grievances is uninhibited, robust, and wide open to all licensed lawyers, citizens, and corporations in the Supreme Court (Rule 5), federal appellate courts (FRAP 46), practice before federal administrative agencies (5 U.S.C. § 500(b)), and in forty percent of the 94 Federal District Courts.[1]

Likewise, the government sweeps under the rug that the Supreme Court has squarely and repeatedly held that bar admission on motion is constitutionally protected, the norm is comity, and it is not going to presume that out-of-state attorneys will violate their professional responsibilities as a matter of law.

---

[1]

http://www.mdd.uscourts.gov/publications/forms/ReciprocalAdmissionDistricts.pdf.

*Supreme Court of Virginia v. Friedman*, 487 US 59 (1988); *Supreme Court of New Hampshire v. Piper*, 470 U.S. 274 (1985)(holding an out-of-state attorney's opportunity to practice law is a fundamental right); *Barnard v. Thorstenn*, 489 US 546 (1989) (holding difficulties in supervising a national bar does not justify discrimination against out-of-state attorneys).

The government whisks under the rug that District Judges are not authorized to delegate federal subject matter jurisdiction to unaccountable state actors without any standards or active supervision: "The judicial Power of the United States shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." Art. III, §1.This grant is *exclusive*.

The government whisks under the rug that in the past, familiarity with Arizona law has been the justification for the Local Rule departure from the norm of comity and the delegation of federal subject matter jurisdiction to state licensing officials who have not taken an oath. Today, however, the Arizona bar exam does not test Arizona law.  The majority of states do not test forum state law on their bar exams.  Familiarity with Arizona law can thus not be an adequate justification to deny *general* bar admission privileges to the Appellants and lawyers licensed in 49 other States and the District of Columbia. Additionally, having passed a test on forum state law cannot be an adequate justification because 40 States and the District of Columbia provide admission on motion to sister-state attorneys.  There

2

is also no evidence in the record below that the Appellants if admitted to the District Court bar will fail to adhere to their professional obligations.

The government asks the Court to turn a blind eye to the Supreme Court's reasoning in *Frazier v. Heebe,* 482 U.S. 641 (1987):

> *Rules that discriminate against nonresident attorneys are even more difficult to justify in the context of federal-court practice than they are in the area of state- court practice, where laws and procedures may differ substantially from State to State. [internal cites omitted] There is a growing body of specialized federal law and a more mobile federal bar, accompanied by an increased demand for specialized legal services regardless of state boundaries. [internal cites omitted] The Court's supervisory power over federal courts allows the Court to intervene to protect the integrity of the federal system, while its authority over state-court bars is limited to enforcing federal constitutional requirements. Because of these differences, the Court has repeatedly emphasized, for example, that disqualification from membership from a state bar does not necessarily lead to disqualification from a federal bar. Ibid.* n. 7. (Emphasis added)

Similarly, the government solicits this Court to pay lip service to the Supreme Court's application of a heightened rational and necessary standard of review set forth in *Frazier v. Heebe.* There, in applying a two-pronged "rational and necessary" standard of review (with the Supreme Court citing *Supreme Court of New Hampshire v. Piper*, as precedent) applied a heightened scrutiny *rational* and *necessary* standard of review. *See Frazier*: "We find both requirements to be *unnecessary and irrational.*" *Id.* at 646 "We therefore conclude that the residency requirement imposed by the Eastern District is *unnecessary and arbitrarily* discriminates against out-of-state attorneys. *Id*. at 649. Similarly, we find the in-

state office requirement *unnecessary and irrational*." *Ibid*. *See* CJ REHNQUIST dissenting: "The Court finds that the Rules Enabling Act, 28 U. S. C. § 2072, "confirms" its power to decide whether local rules are *rational and necessary*." *Id*. at 653.

Despite these admissions the norm is comity and discrimination in federal bar admission is difficult to justify, the DOJ relying on *Occam's* broom, bids this Honorable Court to apply rational basis review in order to preserve *us* vs. *them* invidious discrimination against a discrete class of American citizens.

### A. Rational Basis Is No Longer the Applicable Standard of Review

The DOJ, citing *Giannini v. Real* as the benchmark, argues rational basis review is applicable because no District or Appellate court in thirty years has rejected rational basis review to a Local Rule denying admission privileges to sister-state attorneys. This argument, although wonderfully appealing to locally popular proponents of the "*us* against *them*" culture, is fundamentally misleading relying on *Occam's* broom and is misguided as a matter of pure law for several reasons.

First, the *Frazier* Court explained the basis of its action as follows:

We begin our analysis by recognizing that a district court has discretion to adopt local rules that are ***necessary*** to carry out the conduct of its business. See 28 U. S. C. §§ 1654, 2071; Fed. Rule Civ. Proc. 83. This authority includes the regulation of admissions to its own bar. ***A district court's discretion in promulgating local rules is not, however, without limits.*** *Frazier*, 482 U.S. at 645  (Emphasis added)

4

The government fails to define any rule-making limits. However, *Frazier* expressly defines those limits. In *Frazier,* the Supreme Court rejected exclusion of out-of-state residents [or citizens] in part because *"[n]o empirical evidence was introduced at trial to demonstrate why this class of attorneys, although members of the Louisiana Bar, should be excluded from the Eastern District's Bar.  Frazier,* 482 U.S. at 646-47. (Emphasis added) The rational basis test does not require empirical evidence.  Rational basis review can be justified by any speculation in the record or not. The Court in *Frazier v. Heebe* obviously did not apply rational basis review in requiring empirical evidence, and if the Court had applied rational basis review the Local Rules invalidated there would have been upheld under any conceivable basis in the record or not. The argument that *Frazier* applied rational basis review is fiction.  The terms "difficult to justify" and "rational basis review are mutually contradictory terms like midday and midnight.

The undersigned counsel in *Giannini v. Real* failed to persuade this Court to apply heightened scrutiny to the Local Rule challenge presented there because mistakes happen. Nobody is perfect. Excellent attorneys make mistakes. Sometimes, mistakes happen because of a phenomenon known as *inattentional blindness*;  it is well known that people often do not see what is staring them in the face because they do not expect to see it. A taped study at Harvard University demonstrates this *inattentional blindness* phenomenon.  There were two teams of

basketball players, one wearing blue and one white, throwing the ball to each other. Participants were asked to count the passes from team members to each other. A man in a gorilla costume walked into the middle of the action, brushing shoulders with the players, turned directly toward the camera, beat his chest, and slowly walked off the Court. The study showed that more than fifty percent of the participants in the study were so absorbed in counting the passes they did not see the gorilla in their midst. Afterwards, when the participants watched the tape again, they were so surprised when the gorilla was pointed out to them that many of them accused the experimenters of having doctored the tape between viewings. *See* https://en.wikipedia.org/wiki/Inattentional_blindness#cite_note-3  The undersigned counsel in *Giannini v. Real* failed to convince the Court of the gorilla in its midst, but it is there in plain sight from the beginning.  It is again now in plain sight, and one has to pretend ignorance and worship falsehood not to see it.

Second, rational basis review is inapposite because this Circuit has squarely and subsequently heightened and moved the bar on attorney admission cases from rational basis, from when it decided *Giannini v. Real*,  by subsequently holding that bar admission challenges are First Amendment content neutral — time, place, and manner restrictions. *See NAAMJP v. Berch*, 773 F.3d 1037, 1047 (9th Cir. 2014); *Mothershed v. Justices of Sup. Ct.*, *Mothershed v. Justices of Sup. Ct.*, 410 F.3d 602, 611 (9th Cir.2005). Content neutral, time, place, and manner restrictions

are subject to intermediate scrutiny and the government has the burden of proof. A condition predicate, however, for intermediate scrutiny is content-neutrality. These decisions in *Berch* and *Mothershed* heightened the standard of review from the rational basis floor to intermediate scrutiny. These decisions upholding state discrimination against out-of-state attorneys, however, are inapposite here because federal discrimination is difficult to justify, and neither *Berch* nor *Mothershed* were federal discrimination cases (and they were not argued or decided under *Frazier* or 28 U.S.C. §§ 2071-72.)

Third, rational basis is further not applicable, although it is not necessary to decide this issue here, *Berch* and *Mothershed* have been undercut, because the Ninth Circuit *en banc* decision in *United States v. Swisher*, 811 F.3d 299 (2016) re-examined, vacated, and overruled its prior precedent on differentiating *content discrimination*; and when intermediate level or strict scrutiny review is required as a result of recent Supreme Court First Amendment. *See Swisher*: "The Supreme Court has recently provided authoritative direction for differentiating between content-neutral and content-based enactments." *Id*. at 313 *Swisher* relies upon *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2226–27 (2015), and *United States v. Alvarez*, 135 S.Ct. 2537 (2012). Appellants submit LR 83.1, as in *Reed v. Town of Gilbert*, modifies its substantive right to be free from content discrimination, even though the government does not intend to suppress speech and petitioning. The AZ Local

Rule plainly constitutes content discrimination. The subject of this content discrimination is federal subject matter jurisdiction and federal procedure. The government by disparate licensing standards is picking and choosing certain preferred speakers, messages, attorney-client relationships, and petitioners over others. There is no meaningful First Amendment difference between restraining the freedom to publish a sign that conveys words and a message on a matter of public concern than restraining the freedom of a licensed lawyer in good standing to expressive association and to publish a complaint for the redress of grievances on matters of public concern in the United States Courthouse. Benign intention or not, LR 83.1 is obviously a licensing regulation that interferes with democratic self-government and the search for the truth. Appellants here, as members of the bar in good standing, are not going to be dancing nude, peddling child pornography, or engaging in other unprotected First Amendment activity.

The government asks this Honorable Court to sweep under the rug that it has the burden of proof under First Amendment intermediate scrutiny to both upheld time, place, and manner restrictions, and to prove the restrictions are content neutral. It has not done that in this appeal of a Rule 12(b)(6) dismissal, where the Appellants have requested Summary Judgment. The government has failed to carry its burden of proof. Appellants have carried their burden of proof for judgment under FRCP 56. *See* ER documenting this proof.

## B. Membership In the Arizona Bar is Not Necessary for District Court Bar Admission

It is well settled law that the state and federal bars are separate and autonomous; that disqualification from the state bar does not necessarily lead to disqualification from the federal bar. *Theard v. United States*, 354 U.S. 278, 280 (1956)("disbarment by federal courts does not automatically flow from disbarment by state courts"). The right to practice law before federal courts is not governed by State court rules. *In re Poole*, 222 F.3d 618 (9th Circ. 2000). Suspension from federal practice is not dictated by state rules. *Id.* 620-622; *Winterrowd v. American Gen. Annuity Ins. Co.* 556 F.3d 815, 820 (9th Cir. 2009) ("admission rules and procedure for federal court are independent of those that govern admission to practice in state courts.") In *U.S. v. Ruehle*, 583 F.3d 600 (9th Cir. 2009), this Circuit reversed a California District Judge invoking California State law on attorney-client privilege, holding under the Federal Rules of Evidence that the federal common law of privilege is applicable. "The limits upon federal jurisdiction, whether imposed by the Constitution or by Congress, must be neither disregarded nor evaded." *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 374 (1978) The Opposition, relying on its broom, conveniently does not cite or address any of the above cited cases relied upon in Appellants' Opening Brief because the DOJ lawyers want to win, and in order to do that they must ask this Court to turn a blind eye to its own precedent.

9

## C.  LR 83.1 Is An Abuse of Discretion Because It is Not Necessary

Local Rule 83.1 is also not *rational* and *necessary* as the Supreme Court has recently and repeatedly counseled judges against favoritism for or against any speaker:

> Quite apart from the purpose or effect of regulating content, moreover, the Government may commit a constitutional wrong when by law it identifies certain preferred speakers. By taking the right to speak from some and giving it to others, the Government deprives the disadvantaged person or class of the right to use speech to strive to establish worth, standing, and respect for the speaker's voice. The Government may not by these means deprive the public of the right and privilege to determine for itself what speech and speakers are worthy of consideration. The First Amendment protects speech and speaker, and the ideas that flow from each. *Citizens United,* 130 S. Ct. 876, 890 (2010)
>
> …
>
> *Any effort by the Judiciary to decide which means of communications are to be preferred for the particular type of message and speaker would raise questions as to the courts' own lawful authority. Substantial questions would arise if courts were to begin saying what means of speech should be preferred or disfavored. Id.* at 890 (Emphasis added)

LR 83.1, adopted by the Judiciary, impermissibly favors some speakers/lawyers and messages over others. It favors Arizona lawyers over equally qualified lawyers from other states.  It favors the message of its own lawyers and Indian tribe lawyers over the lawyers from 49 states and the District of Columbia lawyers.  It disfavors all American citizens and lawyers by compelling them to choose an Arizona lawyer. It favors the Arizona Supreme Court by providing it

with full faith and credit for its judicial records and no faith and credit to the judicial records of 49 other state supreme courts and the District of Columbia.

The national rules and forty percent of the District Courts obviously do not invoke this *us* against *them* attorney admission discrimination. The challenged Local Rules do not adhere to the *Frazier v. Heebe* standard of review. "A law declaring that in general it shall be more difficult for one group of citizens than for all others to seek aid from the government is itself a denial of equal protection of the laws in the most literal sense." *Romer v. Evans*, 517 US 620, 633 (1996) "The First Amendment's protection of association prohibits a State from excluding a person from a profession or punishing him solely because he is a member of a particular political organization or because he holds certain beliefs." *Baird v. State Bar of Ariz.*, 401 U.S. 1, 4-6, 8 (1971) (plurality opinion) Appellants, here, (*them*) and are being handicapped and punished solely because they are not from the Arizona Bar Association (that engages in political lobbying much like any union) labeled "*us*." This federal discrimination which departs from the norm of comity, which *Frazier v. Heebe* counsels is difficult to justify, is plainly not necessary.

The government sweeps under the rug that: (i) *Frazier v. Heebe* further holds *pro hac vice* admission is not a reasonable alternative to *general* admission; and (ii) Appellants THAW and DALEY are disqualified by both the *general* and *pro hac vice* admission rules.

As the Opposition Brief highlights, the only factual difference between *Frazier v. Heebe* and this case is that attorney Frazier had passed the Louisiana bar exam. This is a meaningless distinction with no substance because the Arizona bar exam does not test Arizona law.  It does not test patent law, federal taxation, or many other federal practice specialties. The purpose of a bar exam is to protect the public and establish entry level competence. Appellants are disabled because they are federal practice specialists. They are far beyond entry level. All members of the District Court's bar are subject to the Rules of Professional Responsibility, including fiduciary duty rules and malpractice claims, regardless of where they have an office or do business, or in what state they are licensed.

It is also a meaningless distinction because since the time *Frazier* was decided, the ABA has discarded the received wisdom that it is necessary for out-of-state attorneys to take and pass another bar exam to practice successfully in another jurisdiction.  The ABA and the Uniform Bar Exam Commission has concluded one bar exam is enough. A bar examination cannot and does not test many of the skills identified by the [ABA] MacCrate Report as fundamental to the successful practice of law. Nine out of the ten skills identified as fundamental are not tested on the bar exam. It is also well known by testing experts that "Study after study has shown that it is almost impossible to get judges to agree on scores for essay answers." Forty states and the District of Columbia provide *general*

admission on motion privileges to out-of-state licensed attorneys. They do not require an additional bar exam. The United States Judicial Conference has concluded, no one has designed an examination to test one's courtroom skills, further concluding that experience directly correlates with competence.

Rule 83.1 (b) also cannot be justified as rational and necessary in light of *Barnard v. Thorstenn*, 489 US 546 (1989) holding that difficulties in supervising the ethics of a nationwide bar membership does not justify discrimination against out-of-state lawyers.

The government has not offered a shred of evidence that remotely demonstrates that other states' licensing examinations are not trustworthy or entitled to full faith and credit. The government has not offered any evidence that Appellants, if admitted to the District Court bar, will violate their professional responsibilities as members of the bar. The government fails to prove why neophyte Arizona lawyers can be safely trusted to comply with their professional obligations as *generally* admitted members of the bar, but experienced lawyers with a track record of complying with their professional obligations are categorically disqualified. Appellants in this case have already passed bar exams, and they have proven that they are not a threat to the public by their licensing and good standing in other states.

The government has not submitted a shred of substantive evidence to justify this challenged *us* vs. *them* invidious federal discrimination.  Their argument boils down to this:  In *Giannini v. Real*, 911 F.2d  354 (9th Cir. 1990), this Court and other Appellate Courts have disregarded this Supreme Court injunction against federal discrimination in the past, and this Court should continue to rubber-stamp this  departure from the norm of comity as *rational*; otherwise the world as we know it in this 21st Century Information Age will become racially unclean and "*we*" will be compelled to treat "*them*" as equal citizens in the United States Courthouse.

## II. Summary Judgment for Appellants Is Warranted in Light of the Arizona Local Rules Departure from the Norm of Comity and the Supreme Court's Holding That Bar Admission on Motion is Constitutionally Protected

The government argues *Supreme Court of Virginia v. Friedman*, 487 U.S. 59 (1988) has no bearing here.  (OB p. 11).  However, *Friedman*  squarely holds that bar admission on motion for sister-state attorneys is constitutionally protected and the norm is comity.  The First Amendment and many other constitutional provisions fall within the ambit of the Privileges and Immunities Clauses.[2] Virginia

---

[2] *See Supreme Court of New Hampshire v. Piper*, 470 U.S.  at 281 n. 10  defining Privileges and Immunities as including: "***The right of a citizen of one state to pass through, or to reside in any other state, for purposes of trade, agriculture, professional pursuits***, or otherwise; to claim the benefit of the writ of habeas corpus; ***to institute and maintain actions of any kind in the courts of the state; to*** take, hold and dispose of property, either real or personal . . . ." (Emphasis added)

argued attorney Friedman could take the bar examination, and thus the Clause was not offended. The government argues the same thing here: Appellants can take the Arizona bar exam that does not test Arizona law. *Friedman* rejected this contention stating: "The issue instead is whether the State has burdened the right to practice law, a privilege protected by the Privileges and Immunities Clause, by discriminating among otherwise equally qualified applicants solely on the basis of *citizenship* or *residency*. We conclude it has." *Id.* at 67. The norm under the Privileges and Immunities Clause is comity, i.e. equal treatment. As in *Friedman*, AZ LR 83.1 discriminates among otherwise equally qualified sister-state attorneys (citizens) in bar admission on motion. It not only fails the rational and necessary test, it fails to withstand constitutional analysis.

The government, in order the preserve this Local Rule *us* vs. *them* federal discrimination, asks this Court to sweep under the rug the fact that the Appellants in this 21st Century in the United States Courthouse in Arizona are provided the same privileges and immunities that were provided to women and African-Americans in the 19th Century. *See Bradwell v. The State*, 16 Wall. 130 (1873); *In re Lockwood,* 154 US 116 (1894).

***

***

### III. The Government Asks This Honorable Court to Adopt an Absurd Interpretation of 28 U.S.C. §§ 2071-72 and FRCP 83 In Order to Justify *Us* vs. *Them* Invidious Local Rule Discrimination

The government argues LR 83.1 is not governed by the rule-making standards set forth in 28 U.S.C. §§ 2071-72 and FRCP 83. According to the government, the Local Rules need only be rational. According to this argument, Congress was only kidding when it enacted these provisions cabining judicial discretion in enacting Local Rules. According to the DOJ, the Supreme Court cannot enact any national rules that are inconsistent with Acts of Congress, or enact national rules that "abridge, enlarge, or modify any substantive rights," but, on the other hand, District Judges are free to disregard these statutory standards. In other words, District Judge Local Rules can trump the Constitution, Acts of Congress, and the national rules. This is a slippery slope, according to the government, Local Rules are untouchable as long as they can be supported by any conceivable basis in the record or not.

This absurd government argument further flies in the teeth of *Frazier*, *Friedman*, *Piper*, and *Barnard* that applied heightened scrutiny to bar admission rules discriminating against sister-state attorneys. And it equally flies in the teeth of 28 U.S.C. §§ 2071-72, FRCP 83 (and FRAP 47) because these provisions explicitly state District Court (and Appellate Court) Local Rules are subject to the same standards set forth in 28 U.S.C. § 2072.

## A. The Statutory Rulemaking Standards and Ninth Circuit Precedent

28 U.S.C. § 2071. *Rule-making power*, provides:

(a) The Supreme Court and all courts established by Act of Congress may from time to time prescribe rules for the conduct of their business. ***Such rules shall be consistent with Acts of Congress and rules of practice and procedure prescribed under section 2072 of this title***. (Emphasis added)

28 U.S.C. § 2072. *Rules of procedure and evidence; power to prescribe*, provides,

(b) ***Such rules shall not abridge, enlarge or modify any substantive right***. (Emphasis added)

Section 2071(a), by its terms, expressly incorporates the standard set forth in Section 2072. Thus, 2071 and 2072 added together, and incorporated by reference, means that District Court Local Rules **"*shall not abridge, enlarge or modify any substantive right*" and *they shall be consistent with Acts of Congress*.** (Emphasis added)." Thus, Local Rules do not have to be unconstitutional to be abrogated. They need only be inconsistent with an Act of Congress, or abridge, enlarge, or modify a substantive right to exceed permissible rule-making discretion.

The government relies on four cases for its absurd argument that LR 83.1 is not subject to the statutory rule-making standards that cabin judicial discretion, as if the blind should lead the blind. First, they rely upon *Giannini v. Real*. The Court below correctly rejected this argument because the Ninth Circuit's prior decision in *Giannini v. Real*, 911 F.2d 354, 360 (9th Cir. 1990) is "inapposite" (ER11)

17

because it was decided before Section 2072 was amended, and the Ninth Circuit did not decide the case under Section 2072. (Order appealed ER 11) *Giannini v. Real* is also undercut because it was decided before *Citizens United*, where the Supreme Court held corporations have First Amendment rights, and a plethora of recent Supreme Court First Amendment decisions including *Holder v. Humanitarian Law Project*, 561 US 1 (2010 ) (holding a federal statute barring lawyers from giving advice to foreign terrorist was subject to strict scrutiny review.)

Second, the government relies on the decision in *Russell v. Hug*, 275 F.3d 812, 815 (9th Cir. 2002), but the District Court correctly held that decision "is of no avail to Defendants because the Ninth Circuit held that GO2 was not a 'rule' at all,[30] and therefore neither § 2071 nor § 2072 applied." (Order appealed ER 10) *Russell v. Hug* is also misplaced because it shoehorned *Giannini v. Real* by citing it for its conclusion, and not noticing the rational and necessary standard of review gorilla hiding in plain sight.

Third, the government relies on *NAAMJP v. Berch*, 773 F.3d 1037, 1047 (9th Cir. 2014), which relies on *Mothershed v. Justices of Sup. Ct.*, 410 F.3d 602, 611 (9th Cir.2005). Both of these decisions hold that attorney admission cases should be analyzed as First Amendment protected time, place, and manner restrictions. However, these decisions are inapposite because federal

discrimination is difficult to justify and neither *Berch* nor *Mothershed* were federal discrimination cases argued or decided under Sections 2071-72. Additionally, as noted previously, the Ninth Circuit *en banc* decision in *United States v. Swisher*, 811 F.3d 299 (2016) overruled its prior precedent on differentiating *content discrimination*; and when intermediate level or strict scrutiny review is required as a result of recent Supreme Court First Amendment precedent on *content discrimination*. The government, essentially, asks this Honorable Court to apply outdated law and sweep under the rug more modern precedent that proves it bears the burden of proof to produce substantive evidence justifying this federal discrimination in federal bar admission under a heightened scrutiny standard of review.

Fourth, the government asks this Court to rely on a published Fourth Circuit case that will be discussed next.

**B.   This Court Should Not Follow The Fourth Circuit's Published Decision Because It Is Fundamentally Flawed**

The government relies on *NAAMJP v. Lynch*, 826 F.3d 191 (4th Cir. 2016), which upheld a similar challenge to the Maryland District Court Local Rule. This Court is not bound by this out-of-circuit decision, and it should not follow it for several sound reasons.

First, because it mistakenly applies rational basis review, not seeing the rational and necessary gorilla hiding in plain sight beating its chest in *Frazier v. Heebe*.

Second, the District Judge below correctly rejected the 4th Circuit conclusion that LR 83.1 was not subject to these statutory standards:

> "Plaintiffs' argument is persuasive. If Defendants were correct that local rules need only comply with the Supreme Court's § 2072 rules themselves, and not also the statutory limitations to those rules, then the 1988 amendment to the Rules Enabling Act would serve no purpose. The court holds that § 2071 local rules, like § 2072 rules of general applicability, must be procedural in nature." (Order appealed ER 11).

The Fourth Circuit, essentially, holds that Local Rules that are promulgated under the authority of Sections 2071-72 and FRCP 83 are not subject to these rule-making standards; that they need only be rational. This makes no sense. The purpose of these interlocking provisions (as well as FRAP 47 and 28 U.S.C. § 332(d)(4)) is to strictly cabin local rulemaking discretion. One would think that if Congress wanted to authorize Local Rules to be based on any conceivable basis in the record or not, it would do so in revising the *Rules Enabling Act* to say Local Rules need only be rational, instead of amending Sections 2071-72, FRCP 83, and FRAP 47 to expressly state that Local Rules must comply with the standards set forth in Section 2072.

Third, the Fourth Circuit misstates Supreme Court precedent in *Piper*, *Friedman, Frazier*, and *Barnard*. It states:

These cases provide little to no guidance here, as the bar admission rules they considered involved *residency* requirements — which Rule 701 does not — and applied a heightened level of scrutiny — which we need not. *Lynch*, 826 F.3d at 197.

As a matter of constitutional law, the terms *residence* and *citizenship* are interchangeable, as six and a half-dozen. There is no difference in meaning between these terms. *See Supreme Court of Va. v. Friedman*, 487 US 59, 64 (1988) ("While the Privileges and Immunities Clause cites the term 'Citizens' for analytic purposes citizenship and residency are essentially interchangeable.) Moreover, classifications that serve as a proxy for discrimination or operate in practical effect against out-of-state citizens implicate the Privileges and Immunities Clause. *Hillside Dairy Inc. v. Lyons*, 539 US 59, 67 (2003) LR 83.1 discriminates in operation and practical effect against out-of-state citizens and corporations, and their counsel of choice.

Fourth, the Fourth Circuit's conclusion that "nothing prohibits federal law from incorporating state standards" *Lynch*, 826 F.3d at 198, is clearly erroneous. Federal law can only incorporate state law with Congressional approval. Congress has squarely held federal courts are bound to apply the *Federal Rules of Civil Procedure*. *See* 28 U.S.C. § 2072 (Local Rules "*shall not abridge, enlarge or modify any substantive right*" and *they shall be consistent with Acts of Congress);* accord FRCP 83, and 28 U.S.C. § 332(d)(4) authorizing the abrogation of Local Rules that do not conform to 28 U.S.C. § 2072.

21

Additionally, District Judges are not authorized to delegate federal subject matter jurisdiction to state actors. *Frazier v. Heebe*; *Owen Equip. & Erection Co. v. Kroger, supra*, 437 U.S. 365, 374 (1978) ("The limits upon federal jurisdiction, whether imposed by the Constitution or by Congress, must be neither disregarded nor evaded; *Winterrowd v. American Gen. Annuity Ins. Co. supra*, 556 F.3d 815, 820 (9th Cir. 2009) ("admission rules and procedure for federal court are independent of those that govern admission to practice in state courts.")

## C. LR 83.1 Contradicts Numerous Acts of Congress and It Abridges, Enlarges, and Modifies A Plethora of Substantive Rights

This Court has de novo review of the facts and law. The District Court erred in holding that LR 83.1 does not contradict any Acts of Congress and in failing to apply the Section 2072(b) standard "shall not abridge, enlarge, or modify any substantive right."

Initially, the conclusion that a Local Rule that categorily grants *general* bar admission to attorneys from one state and denies the same privileges to lawyers from 49 states and the District of Columbia does not affect any federal substantive rights is wishful thinking supported by a nostalgic emotional attachment to *us* rather than the rule of law. LR 83.1 is obviously heavily tilted in favor of "*us*" versus "*them*," and this uneven playing field is not consistent with numerous Acts of Congress and national rules; and it abridges, enlarges, and modifies a plethora of substantive rights, including the following:

1. The First Amendment provides, in relevant part, that

"*Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances*."

If Congress cannot abridge the right to petition, it follows neither can District Judges by Local Rules adopted by majority vote. LR 83.1 impermissibly authorizes what the First Amendment and 28 U.S.C. § 2071-72 prohibit. Without the right to petition, other substantive rights are meaningless.

Additionally, District Judges are prohibited from enacting Local Rules that abridge, enlarge, or modify any substantive right. The District Court fails to recognize that the Appellants are American citizens. They are both lawyers and litigants. They, like other citizens, also have a First Amendment right to petition and choose their own lawyer. These substantive rights have been modified and abridged, while the substantive rights of Arizona lawyers have been *enlarged*. LR 83.1 abridges and modifies the Appellants substantive right to be free from government imposed content, viewpoint, and speaker discrimination by erecting an uneven playing field that provides Arizona lawyers with a monopoly on First Amendment rights.

According to the Court below, the right to petition is not a right, and when Arizona lawyers exercise this right (that is not a right) *that* does not enlarge any rights (because nobody has any substantive rights in the District Court.)

2. The substantive right to counsel 28 U.S.C. 1654 is plainly abridged, enlarged, and modified by Rule 83.1. This federal discrimination is self-evident because the substantive right to counsel has not been abridged, enlarged, or modified by the national rules (Supreme Court Rule 5, FRAP 46), or by Acts of Congress (5 U.S.C. § 500(b)). But, according to the Court below, the right to counsel is not a substantive right, and just because the national rules treat the right to counsel as a substantive right, does not mean Local Rules have to do the same.

3. This LR 83.1 "us against them" promoting conclusion contravenes the bedrock substantive right,

> "[i]f there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." *West Virginia Bd. of Ed. v. Barnette*, 319 US 624, 642 (1943).

Here, Arizona state licensing officials, who have no jurisdiction over federal bar admission, have been handed the keys to access and petition the United States District Courthouse. Every citizen and corporation in the United States is compelled to comply with Arizona State Bar Association orthodoxy, notwithstanding the fact that it functions as a trade association just like another union. According to the government, "no official" does not mean them; and forcing all citizens in the federal courthouse to confess, retain, and have faith in the Arizona Bar Association insular orthodoxy is our constitutional constellation. This

is allegedly because nobody has any substantive rights in the District Court, except District Judges, and their rights include the right to abridge, enlarge, and modify any substantive rights.

4. The District Court erred in concluding Rule 83.1 is consistent with congressional power over patents, and it does not abridge, enlarge, and modify the substantive rights for patent lawyers and patent holders. Congress has exclusive jurisdiction over patents and trademarks. According to the Court below, just because a state cannot impose additional licensing requirements on patent lawyers, that does not mean that Local Rules cannot adopt state law which results in imposing additional licensing requirements on patent lawyers.

5. Local Rule 83.1 directly trespasses 28 U.S.C. § 1738, which provides "the records of any Court or State are admissible in evidence, and such records shall have the same full faith and credit in every court within the United States as they have by law or usage in the Courts of any such State from which they are taken." Appellants were admitted via a judgment and court order of a state supreme court. "Regarding judgments, ... the full faith and credit obligation is exacting." *Baker by Thomas v. General Motors Corp.*, 522 U.S. 222, 233 (1998). A state is constitutionally required to honor a sister state's judgment even if it disagrees with that judgment: there is "no roving 'public policy exception' to the full faith and credit due *judgments*." *Id.* (emphasis in original). Rule 83.1 is an abuse of

discretion because it modifies and abridges 28 U.S.C. § 1738 by rejecting and denying full faith and credit to the states in which Appellants are licensed by Judicial Acts of sister-state Supreme Courts, and it enlarges the substantive Full Faith and Credit rights of Arizona licensees. The government's reliance on *Giannini v. Real* is misplaced because that case was not decided under 28 U.S.C. § 2072, as the Court below correctly concluded, and it was not argued under 28 U.S.C. § 1738.

According to the Court below, gays and lesbians have a constitutional right to have their state-licensed marriage recognized, but the Appellants and their clients in the District Court do not have any substantive right under the full faith and credit statute to have their attorney-client relationship recognized.

## IV. Rule 83.1's Invidious Discrimination Cannot Pass Rational Basis Review

It is commonly recognized that the three worst decisions in the legacy of American jurisprudence are *Dred Scott v. Sandford*, 60 US 393 (1857), *Plessy v. Ferguson*, 163 US 537 (1896), and *Korematsu v. United States*, 323 US 214 (1944). Each of these cases share a common theme: Invidious based group v. group, "*us* against *them*" discrimination, stereotyping, and the stigmatizing of an unpopular group perpetrated without any substantive evidence. This is the same invidious "*us* against *them*" culture at issue in this appeal.

The Opposition Brief fails to address and does not refute Appellants' contention that LR 83.1 constitutes invidious "*us* against *them*" group discrimination. They offer no evidence or argument that contradicts the conclusions of Berkeley's department chair Dr. Hinshaw or Duke's department chair Dr. Leary. They ask this Court to promote the same party politics that deprived the Hon. MERRICK B. GARLAND of a hearing. LR 83.1 irrationally presumes all novice Arizona lawyers will do very well and highly skilled non-Arizona lawyers will do very badly. This presumption is absurd. Discriminating against individuals purely on the basis of the group to which they belong is invidious discrimination.

Dated: January 20, 2017                             Respectfully submitted,


                                                    /s/ *Joseph Robert Giannini*
                                                    Joseph Robert Giannini
                                                    Attorney for Plaintiffs

## CERTIFICATION AS TO COMPLIANCE WITH
## TYPE VOLUME LIMITATIONS

Appellants' Reply Brief complies with the type-volume limitations. This Opening Brief word count is 6,499 words.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Times New Roman font 14 Microsoft Word 7.

Date: January 20, 2017          /s/ *Joseph Robert Giannini*

_____

Joseph Robert Giannini

## STATEMENT OF RELATED CASES

None pending in this Court

Date: January 20, 2017          /s/ *Joseph Robert Giannini*

_____

Joseph Robert Giannini

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on January 20, 2017.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system

/s/ *Joseph Robert Giannini*
Joseph Robert Giannini, Esq.

## CERTIFICATE FOR BRIEF IN PAPER FORMAT

I certify that this brief is identical to the version submitted electronically on

January 20, 2017   .

/s/ Joseph Robert Giannini
Joseph Robert Giannini, Esq.